646 A.2d 603

**Dong Ha YI**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 1994.

Decided July 22, 1994.

Marc A. Werlinsky, Asst. Counsel–Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellant.

Samuel S. Yun, for appellee.

Before DOYLE and NEWMAN, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals from an order of the Court of Common Pleas of Allegheny County sustaining the appeal of Dong Ha Yi from a one-year suspension of his driver's license.

On the evening of December 10, 1992, Officers Downing and Lesko of the Findley Township Police Department were dispatched to a two-car accident where, upon arriving, they found Yi in proximity to one of the vehicles involved in the accident. Tammy Lynn Vacich, the other motorist involved in the accident, identified Yi as the driver who collided head-on with her vehicle. Vacich also stated that Yi attempted to drive away but was unable to because of the damage sustained to his vehicle in the accident. The officers arrested Yi for driving under the influence of alcohol after noticing the strong odor of alcohol emanating from his person. Yi was transported to the Findley Township Police Department where Yi's girlfriend, Samantha Collette, was present. Officer Lesko read the implied consent warning form to Collette, who then translated it for Yi into his native Korean. Collette told Lesko that Yi had agreed to submit to the test. Officer Lesko also contacted a Korean speaking attorney, Samuel Yun, and a three-way phone conversation ensued which included Yi, Attorney Yun, and Officer Lesko in the conference call. During this phone conversation, Yi indicated, through Attorney Yun, that he did not intend to submit to the test.

By official notice, DOT notified Yi that his operating privilege was scheduled to be suspended for one year as a result of his refusal to submit to chemical testing. *See* Section

1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1). Yi appealed to the trial court which, after a de novo hearing, sustained his appeal stating that the court was bound by an order entered in Yi's separate criminal proceeding in which the court had granted a motion in limine to render inadmissible all communications between Yi and Attorney Yun.

On appeal, DOT argues, *inter alia*, that the trial court erred in concluding that Yi's motion in limine, entered by the court of common pleas in the criminal proceeding, collaterally estopped[1] DOT from relying upon Attorney Yun's statement to prove that Yi refused the breath test.

In *Department of Transportation v. Crawford*, 121 Pa.Commonwealth Ct. 613, 550 A.2d 1053 (1988), we considered whether DOT was collaterally estopped from establishing whether a licensee refused chemical testing where it was previously determined, with respect to the criminal charges filed against the licensee, that he did not refuse to submit to a breathalyzer.

Reversing the decision to sustain the licensee's appeal, we reiterated that it

> is well settled that a Department suspension proceeding for a refusal to take a breathalyzer is an independent civil proceeding separate and distinct from any criminal charges brought against a motorist. The civil proceeding to revoke or suspend a license is not intended as punishment; rather, it is designed to protect the public by denying intoxicated motorists the privilege of using the roadways. Also, a judgment in the criminal proceeding has no effect on the outcome of the civil proceeding because for a criminal proceeding the guilt of the accused must be established beyond a reasonable doubt and in a civil proceeding it is

---

1. Collateral estoppel consists of four elements: (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with the party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue and question in a prior action. *Glasgow, Inc. v. Department of Transportation*, 108 Pa.Commonwealth Ct. 48, 529 A.2d 576 (1987).

sufficient if the offense is established by a preponderance of the evidence.

*Id.*, 121 Pa.Cmwlth. at 615–16, 550 A.2d at 1054 (citations omitted). We then considered whether the criminal proceeding's outcome could collaterally estop DOT from suspending a licensee's license in a civil proceeding. We concluded that collateral estoppel did not apply because DOT was not the same party as, or in privity with, the Commonwealth in a criminal proceeding represented by the county district attorney, and DOT did not have a full and fair opportunity to litigate the refusal issue in the criminal proceeding. Accordingly, we vacated and remanded the case for a hearing on the merits.

█ Based on the our rationale in *Crawford,* we hold that a motion in limine order issued by a court of common pleas exercising its criminal jurisdiction is without force and effect on the wholly unrelated and independent civil proceedings which accompany a statutory license suspension appeal. As in *Crawford,* DOT was not a party to Yi's criminal proceeding in this matter, nor was DOT in privity with the Allegheny County District Attorney's Office. DOT's absence from Yi's criminal proceeding means that DOT was never afforded its right to have a full and fair opportunity to litigate, in the criminal proceeding, whether the communication was privileged. Hence, two of the four elements for a valid claim of collateral estoppel are not present here.

█ We also conclude that the attorney-client privilege does not apply under these facts because the communications between Yi and Attorney Yun were not privileged, and, moreover, were in fact communicated to the police.

The attorney-client privilege has been statutorily adopted into Section 5928 of the Judicial Code, 42 Pa.C.S. § 5928, which provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to

disclose the same, unless in either case this privilege is waived upon the trial by the client.

Of the greatest consequence, there is the glaring fact that there never was a "confidential communication" in the first place; the communication of Attorney Yun was made to the police officer, on behalf of Yi, when all three (Yi, Yun and Lesko) were engaged in a three-way telephone conversation.[2] Yi never asserted the privilege and if he has any complaint that the wrong information was communicated to Officer Lesko (*i.e.*, he meant "yes" but the police officer was told "no") other forums must be employed to settle those matters. The fact that Attorney Yun communicated Yi's refusal to Officer Lesko indicates that neither Attorney Yun nor Yi intended for that portion of the conversation to be confidential and privileged.

■ Furthermore, the attorney-client privilege demands the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer and, what is fundamental, is whether there was a professional consultation with an attorney, who acts or advises as such. *Okum v. Unemployment Compensation Board of Review,* 77 Pa.Commonwealth Ct. 386, 465 A.2d 1324 (1983). Here, the police only contacted Attorney Yun to act as an interpreter for Yi, not to provide legal services. No evidence exists that Yi engaged Attorney Yun to act as his attorney during the three-way conversation and prior to Yi's refusal to take the test. Attorney Yun's relationship to Yi was not transformed from an interpreter to an attorney merely because Yun happened to be an attorney or believed he was acting in a dual role as attorney and translator.

We have held that anything short of an unequivocal assent to submit to chemical testing constitutes a refusal and an allegation that the driver does not understand English provides no foundation for an argument that the driver was unable to make a knowing and conscious refusal. *See Baltha-*

2. This entire telephone conversation between Yi, Attorney Yun, and Officer Lesko, was not only heard by all three individuals, it was recorded on the police emergency line audiotape.

*zar v. Department of Transportation, Bureau of Driver Licensing,* 123 Pa.Commonwealth Ct. 435, 553 A.2d 1053 (1989), *petition for allowance of appeal denied,* 525 Pa. 586, 575 A.2d 116 (1990) (Spanish); *Im v. Department of Transportation,* 108 Pa.Commonwealth Ct. 206, 529 A.2d 94 (1987) (Korean). As the trial judge observed: "You don't get a free ticket because you don't understand Korean or English." [3] (Notes of Testimony at 19.)

 Our review of the record [4] reveals that Yi refused to consent to the required testing and that DOT correctly imposed the operating suspension pursuant to Section 1547(b) of the Vehicle Code.[5] Thus, we reverse the order of the trial court and order Yi's operating privileges suspended.

Reversed.

## ORDER

NOW, July 22, 1994, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed, and the driver's license suspension is reinstated.

3. We note that Officer Lesko testified that, "Mr. Yi, himself said no. Mr. Yi shook his head no. To, directly to me," after he, Yi, spoke to Attorney Yun. Later that evening Yi spoke in English to a friend of his, and he also signed the refusal form presented to him by the police.

4. We are, of course, required to view the evidence in the light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Malizio,* 152 Pa.Commonwealth Ct. 57, 618 A.2d 1091 (1992).

5. Based upon the foregoing analysis and disposition, we find it unnecessary to address DOT's remaining allegations of error.